IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TOM DOE, an individual proceeding under
a pseudonym,

        Plaintiff                                                    Civil No. 08-CV-371-SU

v.                                                                          FINDINGS AND RECOMMENDATION

CORPORATION OF THE PRESIDING
BISHOP OF THE CHURCH OF JESUS
CHRIST OF LATTER-DAY SAINTS, a
foreign corporation sole registered to do
business in the State of Oregon;
CORPORATION OF THE PRESIDENT OF
THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS AND
SUCCESSORS, a foreign corporation sole
registered to do business in the State of
Oregon; THE BOY SCOUTS OF
AMERICA, a congressionally chartered
corporation, authorized to do business in
Oregon; and ORE-IDA COUNCIL, INC,
BOY SCOUTS OF AMERICA, an Idaho
non-profit corporation doing business in
Oregon,

        Defendants.
_____

Page 1 - FINDINGS AND RECOMMENDATION

Sullivan, Magistrate Judge:

Plaintiff Tom Doe, an individual proceeding under a pseudonym, filed a Complaint against the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, Corporation of the President of the Church of Jesus Christ of Latter-Day Saints and Successors (collectively "LDS Church"), the Boy Scouts of America, a congressionally chartered corporation, and Ore-Ida Council, Inc, Boy Scouts of America, an Idaho non-profit corporation, (collectively "Boy Scouts") in the Circuit Court of Malheur County, Oregon. Plaintiff alleges state law claims for sexual abuse of a child under a theory of *respondeat superior*, intentional infliction of emotional distress under a theory of *respondeat superior*, institution wide negligence, and fraud by omission. Defendants removed the case to the United States District Court of Oregon, grounded in diversity jurisdiction, and now seek a transfer of venue, pursuant to 28 U.S.C. § 1404(a), to the federal District of Idaho.

During oral argument on defendants' venue motion, this court, *sua sponte*, questioned whether it had subject matter jurisdiction based on diversity due to the Boy Scouts of America's status as a congressionally chartered corporation. The court granted the parties' request for an opportunity to address this issue. For the reasons set forth below, the court finds that diversity jurisdiction is proper, and defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Directed to First Amended Complaint) should be granted.

*Background*

Plaintiff is an adult male born in 1954, who alleges that as a child he attended religious services, received spiritual instruction, and participated in activities sponsored and promoted by defendants or agents of defendants. Plaintiff alleges that as part of the mission of the LDS Church's Nampa (Idaho) 2nd Ward, the Church's leaders selected Youth Leaders to educate and minister to

Page 2 - FINDINGS AND RECOMMENDATION

families of the Church, including their children. Plaintiff alleges that the Boy Scouts operated various programs for boys and selected adults to serve as Scout Leaders. Plaintiff alleges that the Boy Scouts and the LDS Church jointly operated a Boy Scout troop for the benefit of the Nampa 2nd Ward known as Troop 101.

Plaintiff's claims for sexual abuse of a child, intentional infliction of emotional distress and negligence arise from the actions of Larren Arnold ("Arnold"), a Youth Leader and Boy Scout Leader for the Nampa 2nd Ward. Plaintiff alleges that Arnold, while acting within the course and scope of his employment with the LDS Church and the Boy Scouts, gained the confidence and trust of plaintiff and his family by means of a "grooming" process. This grooming process involved educational and spiritual guidance by Arnold and resulted in plaintiff spending considerable time alone with plaintiff. Plaintiff alleges that he was "conditioned" by the grooming process to trust and respect Arnold and to comply with direction given by Arnold. Plaintiff alleges that he was repeatedly molested by Arnold for three years while Arnold was serving as a LDS Church Youth Leader and Boy Scout Leader and that the LDS Church and Boy Scouts are liable for Arnold's actions under a theory of *respondeat superior*. Plaintiff alleges that the instances of abuse occurred on numerous occasions, and that at least two of the alleged acts occurred while Arnold and plaintiff were in Oregon.

Plaintiff alleges that from at least the 1960's, the LDS Church and the Boy Scouts knew that assignments such as Youth Leader and Scout Leader were being used by pedophiles to gain access to and victimize children. Plaintiff alleges that defendants are negligent for failing to implement an institution-wide policy to address child abuse. Finally, plaintiff alleges that the LDS Church and Boy Scouts have committed fraud by omission for concealing and failing to disclose the institution-wide abuse.

Page 3 - FINDINGS AND RECOMMENDATION

*Discussion*

**I.    Diversity Jurisdiction**

A.    <u>Legal Standard</u>

The court has an independent obligation to insure that subject matter jurisdiction exists. *Arbaugh v. Y. & H. Corp.*, 546 U.S. 500 (2006). For purposes of diversity jurisdiction in a action removed to federal court, a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . ." 28 U.S.C. § 1331 (c)(1). The District of Columbia is considered a state under the diversity statute. *Id.* at § 1332(e).

B.    <u>Analysis</u>

Federally chartered corporations have been considered ineligible for diversity jurisdiction because they were organized under the laws of the United State and not a particular state. *Lehman Bros. Bank*, *FSB v. Frank T. Yoder Mortgage*, 415 F. Supp. 2d 636 (E.D. Va. 2006) (Federal Savings and Loan Insurance Corporation is not a citizen of any particular state for diversity purposes (citing *Hancock Fin. Corp. V. Fed. Savings & Loan Ins. Corp.*, 492 F.2d 1325, 1329 (9th Cir. 1974)); *see also World Savings Bank v. Wu,* No. CV 08-847 HRL, 2008 WL 1994881 (N.D. Cal. May 5, 2008).

There are two exceptions to this general rule. First, Congress may rebut the presumption of national citizenship by specifically providing for incorporation of the federally chartered corporation in a particular state, and second, if a federally chartered corporation is sufficiently "localized" so as to be deemed a citizen of a particular state. *Lehman Bros.*, 415 F.Supp. 2d at 640.

The Boy Scouts of America ("BSA") is a federally chartered corporation pursuant to 36 U.S.C. § 30901. The statute incorporating BSA provides that it is "a body corporate and politic of the District of Columbia." *Id.* This language has been interpreted to mean that a federally chartered

Page 4 - FINDINGS AND RECOMMENDATION

corporation incorporated as a "body corporate" of a particular state is a citizen of that state for purposes of diversity jurisdiction. *See Lehman Bros*., 415 F. Supp. 2d at 640; *Iceland Seafood Corp. v. Nat'l Consumer Co-op. Bank*, 285 F. Supp. 2d 719, 723 (E.D. Va. 2003). Specifically, this language has been held to support diversity jurisdiction for the American Red Cross, whose federal charter declared it to be "a body corporate and politic in the District of Columbia." *Patterson v. Am. Nat'l Red Cross*, 101 F.Supp. 655 (D. Fla. 1951).[1]

The presumption of national citizenship regarding BSA has been rebutted by the language of its charter. BSA is a "citizen" of the District of Columbia for purposes of diversity jurisdiction and, therefore, jurisdiction in this court is proper.

## II.    Proper Venue

### A.    Legal Standard

The removal statute rather that the general venue statute governs venue in cases removed from state court. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953). Venue of a properly removed action is in the "district of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Section provides, however, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

---

[1]The parties have cited no case, nor has the court found a case, that specifically addresses the Boy Scouts of America as a federally chartered corporation in a diversity situation. *But see Little League Baseball Inc v. Welsh Publ'g Group*, *Inc*. 874 F.Supp. 648, 651 (M.D. Pa. 1995) (charter providing for "body corporate" of particular state); *Burton v. U. S. Olympic Comm*., 574 F.Supp. 517, 519 (C.D. Cal. 1983) (same); *Crum v. Veterans of Foreign Wars*, 502 F.Supp. 1377, 1379 n.3 (D. Del 1980) (same).

Pursuant to 28 U.S.C. § 1404(a), a court has broad discretion to transfer a civil action to any other district where the action may have been brought initially, as a matter of convenience for the parties and witnesses, and to further the interests of justice. *Id.* Section 1404(a) was enacted to allow "easy change of venue," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981), and "reflects an increased desire to have federal suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

To transfer a case, a defendant must first show that the transferee court is one in which the action could have been commenced originally. Second, defendant must show that transfer would result in greater convenience to the parties and witnesses, as well as advance the interest of justice. 28 U.S.C. § 1404(a). The Ninth Circuit has set forth several considerations, private and public factors, that can be used in weighing these factors, including: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The court must balance the preference given to plaintiff's choice of forum with the burden of litigating in an inconvenient forum. *Id.; see also Telephone Management Corp. v. The Goodyear Tire & Rubber Company*, 5 F. Supp. 2d 896, 897 (D. Or. 1998).

B.    Analysis

As set forth above, the threshold question regarding defendants' motion to transfer venue is whether the case could have been brought in the District of Idaho. Here, LDS Church defendants maintain offices in Idaho and operate a ward in Nampa, Idaho; the local Boy Scout chapter is an

Idaho non-profit corporation, and the allegations of plaintiff's First Amended Complaint include significant activities that occurred in Idaho. There is no dispute that this case could have been filed in Idaho.

Next, the court must consider public and private interests to determine whether a transfer would yield convenience to the parties and witnesses, and advance the interests of justice. *See Decker Coal,* 805 F. 2d at 843. Defendants assert a change of venue is proper because both private and public factors favor transfer to the United States District Court of Idaho.

1. Private Factors

The private-interest factors the court must consider include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining willing witnesses; (3) possibility of viewing subject premises (if appropriate); and (4) all other factors that render trial of the case expeditious and inexpensive. *Decker Coal,* 805 F.2d at 843.

a. Access to Proof

While a plaintiff's choice of forum is generally accorded substantial weight in proceedings under § 1404(a), that choice is not dispositive. *See, e.g., Decker Coal Co.*, 805 F.3d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). In fact, the convenience of the witnesses "is often the most important factor [in the § 1404(a) analysis]." *A.J. Indus., Inc. v. U.S. Dist. Ct.,* 503 F.2d 384, 389 (9th Cir. 1974). Moreover, if the operative facts did not occur within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice of forum will be given considerably less weight. *See, e.g., Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

Page 7 - FINDINGS AND RECOMMENDATION

With respect to the defense witnesses, all of the living witnesses, except Arnold, reside in Idaho. (David A. Ernst Decl. ¶ 3 and Ex. B, May 6, 2008.)  These witnesses include the former leaders of the Nampa 2nd Ward, Boy Scout leaders who served with Arnold, Arnold's family members, and members of Doe's family.  While plaintiff asserts that he intends to call his therapist and wife to testify at trial, both of these witnesses would be required to travel across Oregon to appear at trial in eastern Oregon.[2]  Indeed, plaintiff does not assert that adjudicating this case in Boise, Idaho, would be more inconvenient or expensive for him than litigation in his choice of forum in Malheur County or Pendleton.[3]  Nor does plaintiff assert that he or his witnesses would be unable to participate in a trial in Idaho.  The court finds a greater inconvenience to the defenses witnesses by retaining venue in Oregon.  The factor of access to proof weighs in favor of transfer.

### b. Compulsory Process

Defendants argue that non-party witnesses living in Idaho could not be compelled to attend a trial in Oregon.  The court is permitted to take judicial notice[4] of the fact that the County seat for

---

[2]Because this case arises in the Pendleton Division, *see* L.R. 3.3(b), the case would likely be tried in Pendleton or any other location within the Pendleton Division.  *See* 28 U.S.C. § 1404(c).

[3]Plaintiff makes a bare allegation that he would "incur relatively higher costs" if venue were transferred to Idaho.  (Pl.'s Resp. Transfer Venue 8.)  Plaintiff does not explain, nor is the court able to discern, why this may be true given the proximity of Boise, Idaho, to plaintiff's choice of forum.  Simply put, plaintiff has not made an adequate showing that Idaho is a less convenient or a more expensive forum for this dispute.

Further, plaintiff's claim of financial hardship is not a factor that must be weighted more heavily than other considerations.  Indeed, the relative means of the parties is not a factor enunciated by the Ninth Circuit that must be considered by the court in determining whether transfer is warranted under section 1404(b).  *See, e.g., Decker Coal Co.*, 805 F.2d at 843.  Nor has plaintiff explained to the court while litigation in Idaho will be more expensive than litigation in more remote eastern Oregon.

[4] Geographical facts may be judicially noticed.  *Muckleshoot Tribe v. Limmi Indian Tribe,* 141 F.3d 1355, 1358 n.4 (9th Cir. 1998).

Malheur County is approximately 75 miles west of Boise, Idaho, with Nampa 19 miles west of Boise, and even closer to Oregon.  A review of defendants' list of potential witnesses reveals that most of the witnesses reside in either Boise or Nampa, Idaho.  Accordingly, if a trial were to occur in Malheur County, the non-party witnesses would be subject to the court's subpoena authority under Rule 45(b)(2) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 45(b)(2) ("a subpoena may be served at any place . . . outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection. . . .")

Defendants are also concerned that the federal court sitting in Oregon may lack jurisdiction over a potential third-party defendant, namely Arnold, who lived in Idaho at the time of the events detailed in the First Amended Complaint and now resides in Phoenix, Arizona.  Plaintiff responds that the court in Oregon would have jurisdiction over Arnold based on the allegations of abuse occurring within the State.  At this juncture, plaintiff's allegations of Arnold's conduct within Oregon provide a sufficient basis for this court to exercise jurisdiction over Arnold.   However, Idaho would also have jurisdiction over Arnold for the same reasons.  The factor of compulsory process weighs equally for each jurisdiction.

c.  Convenience to the Parties

By retaining venue in Oregon, defendants, who are all located in Idaho, would be required to retain Oregon counsel who, at significant expense, must travel to Idaho to depose witnesses and gather evidence.  Additionally, as mentioned above, plaintiff would be required to travel to eastern Oregon for a trial if venue is retained in Oregon.  As such, requiring plaintiff and his witnesses to travel to Boise, Idaho, is not unreasonable.   Finally, if a trial is held, both parties would expend resources in transporting Idaho witnesses to Oregon.  The factor of convenience to the parties weighs in favor of transfer.

Page 9 - FINDINGS AND RECOMMENDATION

The court finds the public factors weigh in favor of transferring venue to Idaho. It is undisputed that most of the evidence – documentary proof and witnesses – are located in Idaho. Additionally, most of the conduct – grooming process, abuse, concealment – giving rising to plaintiff's claims occurred in Idaho, and all defendants are located in that State. Conversely, there are but two significant connections to Oregon: plaintiff's current residence, in or near Portland, and the allegation that two events of abuse occurred in Oregon. A review of Doe's First Amended Complaint reveals, however, that virtually all of defendants' conduct that gives rise to Doe's claims occurred in Idaho. (First Am. Compl. 2-9.) With the exception of plaintiff and Arnold, all the witnesses who will be called to provide direct testimony regarding the alleged events reside in Idaho. In addition, both plaintiff and Arnold resided in Idaho at the time of the events in question.

## 2. Public Factors

The public-interest factors the court must consider include: (1) administrative difficulties flowing from court congestion; (2) unfairness of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of unnecessary problems in conflicts of law. *Decker Coal*, 805 F.2d 843.

### a. Local Interest/Relation to Litigation

With respect to this public factor, there can be no dispute that, as between Idaho and Oregon, Idaho has the more significant local relationship to the controversy. Even a cursory review of the First Amended Complaint reveals that the alleged relationship between Arnold and plaintiff was developed, fostered and concealed in Idaho. Plaintiff and his family resided in Idaho during the period of abuse, as did Arnold, the LDS Church defendants, and the Boy Scout defendants. In sum, everyone with alleged involvement and culpability for the abuse lived in Idaho during the relevant

Page 10 - FINDINGS AND RECOMMENDATION

time period.  Moreover, the alleged grooming process, some of the events of abuse, and the efforts to conceal or ignore the abuse occurred in Idaho.  While it is extremely unfortunate that a child may have suffered abuse from a trusted adult within the boundaries of Oregon, the events and relationships detailed in the First Amended Complaint occurred primarily in Idaho, making Idaho both the convenient and appropriate forum for this litigation.  Though there can be no doubt citizens of either state asked to serve as jurors would be keenly interested in protecting both its residents and its visitors from such harm, venue for this action more properly belongs in Idaho.  The factor of local interest weighs in favor of transfer.

### b.  Governing Law

A federal district court sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law.  *Fields v. Legacy Health System*, 413 F.3d 943, 950 (9th Cir. 2005).  Under Oregon law the "threshold question in a choice-of-law problem is whether the law of the different states actually conflict."  *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 301, 157 P.3d 1194 (2007).  Assuming that there is a difference between Oregon and Idaho law,[5] Oregon's choice of law analysis asks which state has the most substantial interest in having its law applied and which state has the most significant relationship to the case.  *Id*. at 304; *See, e.g., Lilienthal v. Kaufman*, 239 Or. 1, 395 P.2d 543, 545-46 (1964) (*en banc*).  The relevant factors in determining which state's tort law applies are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship,

---

[5]Plaintiff concedes that both Oregon and Idaho law could control.  (Pl.'s Resp. Mot. Transfer Venue 9.)  Defendants argue that Idaho and Oregon law conflict on the issue of *respondeat superior*.  (Defs.' Reply Mot. Transfer Venue 13.)

if any, between the parties is centered. *Fisher v. Huck*, 50 Or. App. 635, 638, 624 P.2d 177,178 (1981).

As discussed above, Idaho has the most significant relationship and interest in the case. Idaho law likely will control plaintiff's claims here. *See, e.g., Whitwell v. Archmere Academy, Inc.*, 463 F. Supp. 2d 482, 487 (D. Del. 2006) (Delaware law applied despite abuse during two trips to Vermont – Delaware had greater contacts with the parties and issues). The factor of governing law weighs in favor of transfer.

The court finds that both the private and public factors weigh in favor of transfer. Thus, "[f]or the convenience of parties and witnesses, in the interest of justice", Doe's First Amended Complaint should be transferred to the United States District Court in Idaho.

## RECOMMENDATION

Based on the foregoing, defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. Section 1404(a) (Directed to First Amended Complaint) (doc. # 27) should be GRANTED, and this action TRANSFERRED to the United States District Court of Idaho. All pending motions should be DENIED as MOOT.

Dated this 6th day of April, 2009.

            /s/ Patricia Sullivan
            Patricia Sullivan
            United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **April 20, 2009**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.